UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-22185-CIV-HOEVELER

MARIUS ARILUS, DONAUS JEAN FRANCOIS,
OLIBERTEAU COLIN, and other
similarly-situated individuals,

     Plaintiffs,

v.

JOSEPH A. DIEMMANUELE, JR., INC.,
JOSEPH A. DIEMMANUELE, JR., and
GARDENS OF EDEN NURSERY, LLC,

     Defendants.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on the Defendants' motion for summary

judgment.  Defendants assert that they are not liable because Plaintiffs'

employment was not subject to the Fair Labor Standards Act (FLSA), 29 U.S.C. §

201 *et seq.*, and, as such, the Court lacks subject matter jurisdiction over this case;

Defendants also argue that even if jurisdiction existed, Plaintiffs are unable to

prove damages.  Plaintiffs responded in opposition, claiming that material facts are

disputed.  The Court heard brief argument from counsel for both parties on August

20, 2012, and for the reasons stated below, the Court has determined that

Defendants are entitled to summary judgment.

Plaintiffs were employed for many years by the corporate Defendants, a law

maintenance service and a tree nursery - both owned by individual Defendant

Joseph A. DiEmmanuele, Jr. (DiEmmanuele).  Plaintiffs performed landscaping

work for Defendant Joseph A. DiEmmanuele, Jr., Inc. (JAD), and provided general assistance while working for Defendant Gardens of Eden Nursery, LLC (Gardens). After their discharge from employment, Plaintiffs filed this action on July 23, 2009, seeking relief under the FLSA for unpaid overtime wages.

The FLSA provides that an employee can establish entitlement to the protections of the statute by demonstrating either that the employee is covered individually, as a result of the employee's direct participation in interstate commerce-related activities, or that the employee is employed by an enterprise that is engaged in interstate commerce.  29 U.S.C. § 207(a)(1), <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F. 3d 1292 (11th Cir. 2011).  To establish "enterprise coverage" an employee must not only demonstrate that the enterprise is engaged in interstate commerce, but also must establish that the enterprise's "annual gross volume of sales made or business done is not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(ii).

Defendants correctly note that it is Plaintiffs' burden to establish that subject matter jurisdiction exists.  Even construing the facts in the light most favorable to Plaintiffs, as the Court must do when considering the pending motion for summary judgment, the Court finds that Plaintiffs have offered no compelling evidence that their employment involved the regular and direct "participati[on] in the actual movement of persons or things in interstate commerce," <u>Thorne v. All Restoration Servs.</u>, 448 F. 3d 1264, 1266 (11th Cir. 2006), and, as such, the Court concludes that there is no basis for liability under the "individual coverage" theory.  As to the

"enterprise coverage" theory, the Court first addresses the question of whether Defendants had sufficient annual sales or business done, and then will address the other requirement, i.e., that Defendants' enterprise(s) engaged in interstate commerce, only if the Court finds that Defendants had annual sales or business done of at least $500,000 in the relevant years. According to the applicable statute of limitations, 29 U.S.C. § 255, Plaintiffs may seek unpaid overtime wages for a period of two years prior to the date on which this case was filed unless Plaintiffs can establish that the unpaid wages were the result of a "willful violation" - if Plaintiffs demonstrate willfulness, then the relevant period of damages is extended by one year.

Plaintiffs are Marius Arilus (employed for approximately fourteen years until he was discharged in October 2008), Donaus Jean Francois (employed for approximately thirteen years until he was discharged in February 2009), and Oliberteau Colin (employed for approximately ten years until he was discharged in February 2009); each Plaintiff claims damages of $44,460 for three years of unpaid overtime. Plaintiffs initially only included Defendants JAD and DiEmmanuele in this lawsuit, and then after Defendants challenged Plaintiffs to demonstrate that subject matter jurisdiction existed, i.e., that Defendants were subject to the FLSA by having had more than $500,000 in annual sales or business done, Plaintiffs amended their complaint on February 2, 2011, to include Defendant Gardens as a "joint employer" along with the original two Defendants. Counts I and III of the Amended Complaint claim that overtime compensation is owed to Plaintiffs by the

corporate Defendants, and Counts II and IV are brought against Defendant DiEmmanuele as operator of each of the corporate entities.

Defendants deny liability and assert that there is no issue of material fact as to whether Defendants had sufficient annual gross sales (in excess of $500,000) to be subject to the FLSA - regardless of whether Defendants are viewed as individual employers or as a joint employer. Defendants have provided the income tax returns filed by the Defendant corporations during the relevant years, which are - at most[1]- the three years prior to the date of filing this action, i.e., July 24, 2006, through July 23, 2009. To determine whether an employer's annual sales/business are sufficient to trigger FLSA coverage, the Court examines whether the employer's business exceeds the dollar volume requirement in a given calendar year and, if so, then the enterprise will be presumed to be covered in that year.[2] A review of the Defendants' tax returns reveals the following in gross receipts or sales (rounded to the nearest whole dollar amount):

_____

[1]The statute of limitations can be extended beyond two years, to allow for an additional year's worth of damages, only upon a showing of a "willful violation" by the employer. The Court will address the question of "willfulness" by Defendants later in this Order.

[2]As an alternative, the annual gross volume of sales can be determined by examining the employer's earnings during the twelve months preceding the beginning of a fiscal quarter (the "rolling quarter" method, as described in 29 C.F.R. 779.266). The Court has not relied on this method, and notes that the Plaintiff has not presented compelling evidence to contradict the statement by Lorraine DiEmmanuele that "from the second quarter of 2005 to the last quarter of 2007, ... in no four-quarter period were the gross sales of the corporate [sic] over $500,000, the closest to the $500,000 mark was the calendar year 2006 at $475,000." Sworn Declaration of Lorraine DiEmmanuele (Defendant's wife and the person responsible for the financial operations) dated May 5, 2010, Dkt. No. 50-4, ¶ 8.

| Tax year | 2006 | 2007 | 2008 | 2009 |
|---|---|---|---|---|
| Garden of Eden Nursery, LLC | $ 0 | $ 26,303 | $ 21,354 | $ 17,005 |
| J.A. DiEmmanuele, Jr., Inc. | $521,701 | $404,136 | $342,811 | $235,309 |
| Totals: | $521,701 | $430,439 | $364,165 | $252,314 |

The Court will assume, for the purposes of this analysis and without deciding the matter, that Defendants were "joint employers" of Plaintiffs.  The Defendants' total gross receipts for each year reveals the following: 2006: $521,701; 2007: $430,439; 2008: $364,165; and 2009: $252,314; thus, the Defendants' tax returns for 2007, 2008, and 2009 establish that their annual sales/business did not meet the $500,000 requirement, even if the Defendants are considered as "joint employers" of the Plaintiffs.  (The Court will address the 2006 tax return, below.)  Despite this compelling evidence as to the years 2007-2009, Plaintiffs claim that Defendants jointly had sufficient revenue to be liable under the FLSA at all relevant times and that the Defendants' tax returns do not reveal complete information as to the "business done" by Defendants.  According to Plaintiffs, Defendants received cash payments from customers occasionally and regularly paid wages to some employees in cash which were not reported to the IRS; as such, Plaintiffs claim that the Defendants' income tax returns cannot be accurate as to the annual gross sales or business done.  In other words, Plaintiffs ask this Court to find that Defendants under-reported the gross receipts of the corporate entities by $70,000 in 2007, $136,000 in 2008, and $248,000 in 2009; in support of their argument, Plaintiffs

5

offer their own testimony.

Plaintiff Arilus testified that he only saw Defendant collect cash from a customer on one or two occasions. See Depo. of Arilus, p. 28 of Dkt. No. 62-19; p. 5 of Dkt. No. 62-21.[3]  Plaintiff Francois testified that he saw customers paying Defendant in cash, see Depo. of Francois, p. 19 of Dkt. No. 62-15, but he was unable to identify the general time period or which customer(s), see Depo. of Francois, pp. 18, 20 of Dkt. No. 62-16.  Two of the Plaintiffs admitted in their testimony that it was their employer's policy to not permit employees to collect payments from any customers. See Depo. of Colin, p. 6 of Dkt. No. 51-4 ("[Defendants] will not take the cash money.  I always ask them for a check."); Depo. of Francois, pp. 10-11 of Dkt. No. 51-2.  Plaintiff Arilus testified that there were four customers who would give him cash payments, see Depo. of Arilus, p. 30 of Dkt. No. 62-19, p. 3 of Dkt. No. 62-21, but that he was told in 2008 to stop taking payments and instead to call Defendant DiEmmanuele on the radio if a customer tried to make a payment, see Depo. of Arilus, p. 4 of Dkt. No. 62-21.  Plaintiff Francois admitted that if a customer paid him directly, which only happened on rare occasions and was never a cash payment, he would give such payment to Plaintiff Colin to be submitted to the employer, see Depo. of Francois, pp. 20-21 of Dkt. No. 62-15.  None of the witnesses

---

[3]Plaintiff Arilus also provided the following statement, which lacks specificity and was not supported by other evidence. "I know Defendants earned more money than they are claiming because Defendants wanted to hide their money and not show income and pay everyone in cash.  I know Defendants did not report all of the cash they earned to the IRS and I know Defendants did not report all of the cash they paid me [to] the IRS.  I know Defendants employed many illegal aliens who were paid in cash and Defendants did not report these employees to the IRS for income or cash paid."  Arilus Affidavit, Dkt. No. 62-22, ¶ 9.

were precise in their testimony as to the dates of any alleged cash payments.
Moreover, none of the Plaintiffs were employed by Defendants after February 2009,
and, as such, Plaintiffs are unable to offer any personal observations as to
Defendants' financial practices in 2009.

Defendant DiEmmanuele testified that any cash received from customers
was reported in the corporate income tax returns, see Transcript of Deposition
(Depo.) of DiEmmanuele, pp. 39-41 of Dkt. No. 62-2, and that he had no residential
clients during the period 2005 through 2009 who made cash payments, see Depo. of
DiEmmanuele, p. 16 of Dkt. No. 62-27.[4] Defendant's wife, Lorraine DiEmmanuele
(the person responsible for the financial operations of the corporate entities), has
provided a statement that no cash was received by the business that was not
reported, nor was there any difference between the reported gross sales and the
actual gross sales. Sworn Declaration of Lorraine DiEmmanuele dated May 5,
2010, Dkt. No. 50-4, ¶ 3. Defendants' disavowal of unreported revenue
distinguishes this case from Francois v. Fried Green Tomatoes, 306 Fed. Appx. 443
(11th Cir. 2008), in which the employer acknowledged revenue had not been reported
(but argued that any such revenue was de minimus); the appellate court in that
case affirmed the lower court's post-trial denial of the employers' request for
judgment as a matter of law, finding that there was sufficient evidence for the jury

---

[4]Defendant DiEmmanuele testified - consistent with Plaintiffs' testimony -
that on one occasion Plaintiff Colin had accepted an envelope from a customer
containing a payment, but Defendant then specifically instructed his employees
that they should never accept anything from a customer. See Depo. of
DiEmmanuele, pp. 19-20 of Dkt. No. 62-3.

to have found that the employer had annual gross revenue exceeding $500,000.[5]

Even taking all of the testimony in the light most favorable to Plaintiffs, the Court finds that the Plaintiffs' testimony as to alleged payments from customers in cash on a few occasions simply is insufficient to establish that there is a disputed issue of <u>material</u> fact as to the volume of Defendants' annual sales or business done. To find FLSA liability in this case, the Court would be required to accept an inference that the receipt of some cash payments from some customers implies that Defendants under-reported the gross receipts on their federal income tax returns in an amount exceeding $70,000 in 2007, exceeding $136,000 in 2008, or exceeding $248,000 in 2009 (the difference between the reported gross receipts in 2007, 2008, and 2009, respectively, and the FLSA threshold of $500,000). Plaintiffs' own testimony does not support a finding that more than $70,000 was under-reported in any year as a result of cash payments being accepted occasionally from customers: Plaintiff Arilus testified that he saw cash collected from customers on only one or two occasions, and that he had only four customers who gave him cash payments (all prior to 2008); both Plaintiffs Colin and Francois admitted that it was their employer's policy to not permit employees to collect payments (in cash or other

---

[5]The annual ledger sheets of the employer in that case, Fried Green Tomatoes, Inc., a restaurant, revealed annual sales of between $464,000 and $496,000 during the relevant years. At trial, the employee seeking unpaid overtime wages had testified that multiple employees were paid wages from the restaurant's gross revenues prior to calculating the ledger sheets, and therefore the ledger sheets presented at trial under-reported the actual gross sales. This evidence differs significantly from the evidence presented by the Plaintiffs in the present case, e.g., the reported annual sales in <u>Fried Green Tomatoes</u> were much closer to the $500,000 threshold amount than the reported annual sales in the present case for 2007-2009 (which ranged from $252,314 - $430,439).

forms of payments) from customers; Plaintiff Colin testified that Defendants would not accept cash; and Plaintiff Francois admitted he was only paid by a customer on rare occasions and never in cash. Although Plaintiffs offered some contradictory statements (Plaintiff Arilus stated in his Affidavit that "I know Defendants earned more money than they are claiming because Defendants wanted to hide their money" and Plaintiff Francois stated that he saw customers paying Defendant in cash), these statements lack specificity and appear to be based solely on assumptions without direct knowledge of any under-reporting of annual sales or business done.

As noted above, Plaintiffs were not employed by Defendants after February 2009, so the record evidence to support Plaintiffs' claim that the FLSA applies is particularly lacking as to the year 2009. As to 2009, as well as 2008 and 2007, the Court finds that Plaintiffs' speculative beliefs, not based on direct "knowledge or experience with the financial practices of the business," are insufficient to defeat Defendants' motion for summary judgment. Hernandez v. Nanju Corp., 2008 U.S. Dist. LEXIS 35481, 2008 WL 1925263 (S.D. Fla. April 30, 2008). Simply stated, the Court is unable to accept Plaintiffs' argument that the Court should infer that Defendants under-reported their annual sales or business done, as Defendants' tax returns, the testimony of Defendant DiEmmanuele, and the Declarations of his wife collectively provide more persuasive evidence than that provided by Plaintiffs. While all "justifiable inferences" are to be drawn in favor of the non-movant when a court considers a motion for summary judgment, Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986), the Court cannot find that the Plaintiffs have presented a "justifiable" inference that Defendants' annual sales or business done reached $500,000 in 2007, 2008, or 2009.

Plaintiffs also claim that because Defendant DiEmmanuele admitted that he paid some employees in cash (which he did not include in the employees' income statements), there is a material issue of fact as to the amount of Defendants' annual gross sales. For example, Defendant admitted that when an employee worked in excess of 45 hours weekly, the excess hours were paid in cash, as requested by the employee, and were not reported on the employees' W-2 statement. See Depo. of DiEmmanuele, pp. 28-29 of Dkt. No. 62-28, p. 11 of Dkt. No. 62-29, pp. 5 -10 of Dkt. No. 62-30. Defendant testified that this was a mistake on his part, and that it happened "very seldom, and would be only an hour or two," see Depo. of DiEmmanuele, pp. 27-29 of Dkt. No. 62-27, p. 2 of Dkt. No. 62-28; and that he paid no employees other than the three Plaintiffs in cash as none others worked more than 45 hours in any week, see Depo. of DiEmmanuele, p. 31 of Dkt. No. 62-23. Defendant admitted that he did not keep records of the cash paid to his employees. See Depo. of DiEmmanuele, p. 20 of Dkt. No. 62-28.

Plaintiffs claim that the cash used to pay some employees must have been received from customers who had paid for lawn services or had purchased trees from the nursery with cash and, therefore, that Defendants had more income in cash that was not reported and which would have increased Defendants' yearly

10

sales to more than $500,000.  Defendant testified that the source of these limited cash payments to these three Plaintiffs was his personal funds and that the cash did not come from customers' payments or sales at the nursery.  See Depo. of DiEmmanuele, pp. 7-8, 11, 13-14, 25 of Dkt. No. 62-2.  He testified that when Plaintiffs were paid cash, which was infrequent, and was in small amounts, the cash would be paid after the company payroll had been completed, and the source of the cash was Defendant DiEmmanuele's personal funds or proceeds from investments, etc.  Id. at pp. 8, 11.  Defendants argue that even if they failed to report certain cash payments made to Plaintiffs - which Defendants claim occurred on a very infrequent basis - that does not change the amount of "annual gross volume of sales made or business done."  The Court agrees, and does not find Plaintiffs' argument, nor the evidence offered in support thereof, sufficient to establish, as Plaintiffs must, the existence of subject matter jurisdiction - nor does the evidence even raise a question of material fact as to this issue.  Plaintiffs' testimony is based principally on "conjecture and speculation," and is not sufficiently probative to establish the existence of a genuine dispute as to a material fact.  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292 (11th Cir. 2011).

Even considering the evidence in the light most favorable to Plaintiffs, the Court cannot find that the cash payments - which Defendants admit were made to these three Plaintiffs but only occasionally, for a limited number of hours, and from Defendant DiEmmanuele's personal funds - represented a substantial amount of

unreported revenues. The Court finds no basis to accept Plaintiffs' inference that the unreported (on the W-2 forms) cash payments of wages for a few hours on those occasional weeks when Plaintiffs exceeded 45 hours equates to unreported gross receipts of more than $70,000 in 2007, more than $136,000 in 2008, or more than $248,000 in 2009. In summary, the Court finds that Plaintiffs have not raised a question of material fact as to the Defendants' annual gross volume of sales made or business done for the calendar years 2007, 2008, or 2009. Accordingly, the Court need not address the question of whether Defendants' enterprise engaged in interstate commerce. Plaintiffs have not established that the Defendant was subject to the provisions of the FLSA for the years of 2007 through 2009.

The Court now turns to the question of whether the Defendants' annual gross volume of sales made in 2006 were sufficient to meet the FLSA threshold, i.e., whether Defendants had more than $500,000 in annual gross volume of sales in 2006, which would satisfy the first prong of the "enterprise coverage" test. The question of Defendants' sales in 2006 is only relevant if Plaintiffs have established a basis for extending the statute of limitations beyond two years, i.e., extending the damages period back to July 2006. As discussed below, the Court finds that Plaintiffs have failed to do so and, therefore, the Plaintiffs are not entitled to pursue a claim for unpaid wages from July 2006 through July 2007. The Court has addressed the question of Defendants' sales in 2006, however, as the facts demonstrate that the amount of Defendants' sales in 2006 provides additional

support for the Court's decision to enter summary judgment against Plaintiffs in this FLSA action.

Defendants claim that the $521,701 in gross receipts reported in the corporate income tax return for 2006 includes money deposited in January 2006 which had been earned in the prior year. According to Defendants, and undisputed by Plaintiffs, Defendants employ a "cash basis" accounting system and, therefore, report income/receipts at whatever time such funds are collected instead of the time at which the business is conducted. For example, according to Defendants - and supported by invoices and bank records supplied by Defendants, work performed in November 2005 which was not paid by the customer until January 2006, would be reported in the Defendants' income tax returns for the year 2006. Specifically, Defendants offered evidence that demonstrates that of the $521,701 reported as gross receipts in 2006, more than $100,000 was for work performed in 2005; for example, a deposit made on Tuesday, January 3, 2006,[6] included $31,075.50 in payments which Defendants' invoices establish were related to work performed for customers in 2005 and which payments were received in 2005. See Sworn Declaration of Lorraine DiEmmanuele dated December 2, 2011, Dkt. No. 50-5, ¶ 3. At a minimum, if the Court deducts this amount from the reported gross receipts in 2006, the figure is reduced to $490,625.50, and the amount would drop even further if the entire revenue related to work performed in 2005 was deducted. Plaintiff has failed to persuade the Court that this evidence should be ignored.

---

[6]The Court observes that Tuesday, January 3, was the first business day of 2006.

In Bridewell v. Cincinnati Reds, 155 F.3d 828 (6th Cir. 1998), maintenance staff employees of a major league baseball franchise sought the protections of the FLSA. The franchise argued that it was exempt from the FLSA because the franchise was a seasonal entertainment establishment operating for less than seven months of each year or not having receipts in any given six months which exceeded one-third of the receipts during any other six months of the year, citing 29 U.S.C. § 213(a)(3).[7] The trial court ruled against the franchise, finding that the franchise did not qualify for the seasonal establishment exemption because it had receipts throughout the year which exceeded the applicable test, i.e., that the franchise had receipts during the rest of the year which exceeded one-third of the amount of receipts during the baseball season.[8] Because the franchise utilized the accrual method of accounting (for example, the franchise would not record revenue from ticket sales until the specific game was actually played), the franchise argued that it should be considered exempt from the FLSA based on the fact that less than one-third of its revenue was actually accrued in the off-season (even if the funds were

_____

[7]The FLSA statute exempts the following from the minimum wage and maximum hour requirements of the statute:
> any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit education conference center, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year ....

29 U.S.C. § 213(a)(3).

[8]For example, the franchise received money during the off-season for ticket sales, broadcast rights for the baseball games, etc., and, therefore, had significant receipts even in the off-season.

14

received in the off-season).  On appeal, the appellate court noted that the trial court below had recognized that the accrual method of accounting was "the best method of accounting to show the nature of just about every business that you could think of ... [and] best reflects income earned and expenses attributed to that income," id. at 830, but that the court was compelled to apply the statutory language which specified "receipts" and not "income" as the relevant standard, and therefore affirmed the finding of liability against the franchise.  This Court also agrees that the accrual method appears to be preferable as a measure of an employer's actual annual sales or business done.  See also Centeno-Bernuy v. Becker Farms, 564 F. Supp. 2d 166 (W.D.N.Y. 2008) (adding a late-cashed check payment to prior year's sales for FLSA jurisdictional threshold purposes where it was conceded that payment was for prior year's sale but was recorded in subsequent year when check was cashed).

In light of Defendants' use of the cash method of accounting, it might be that in subsequent years the "gross receipts" indicated on the corporate income tax returns are not reflective of the annual gross sales or business done by the Defendants.  However, Plaintiffs have not presented compelling evidence that a sufficient amount of Defendants' 2007 receipts related to sales which occurred in 2006 such that the total annual sales in 2006 - even after deducting income earned in 2005 from the reported gross receipts in 2006 - would have exceeded $500,000. Evidence presented by Mrs. DiEmmanuele reveals that "from the second quarter of 2005 to the last quarter of 2007, ... in no four-quarter period were the gross sales of

the corporate [sic] over $500,000, the closest to the $500,000 mark was the calendar year 2006 at $475,000." Sworn Declaration of Lorraine DiEmmanuele (Defendant's wife and the person responsible for the financial operations) dated May 5, 2010, Dkt. No. 50-4, ¶8.[9] Plaintiffs offer only their own testimony, as summarized above, to support their argument that Defendants had sufficient sales to meet the $500,000 threshold in any given year.  The Court determined that this testimony was insufficient to establish that $70,000 or more had been under-reported by Defendants on their corporate income tax return filed for 2007, and similarly finds that the testimony is insufficient to establish that sufficient sales were made or business was done in 2006.[10]

Moreover, Plaintiffs do not credibly contest Defendant DiEmmanuele's testimony which describes the corporate Defendants as small-scale employers, operating in a relatively localized geographic area.  According to Defendants, in 2006, Defendants operated one truck to provide lawn care services and a separate truck for landscaping services (with two or three employees assigned per truck). See Depo. of DiEmmanuele, p. 40 of Dkt. No. 62-29, p. 2 of Dkt. No. 62-30. Plaintiffs testified that there were approximately three employees assigned per

_____

[9]Nor have Plaintiffs established that any additional sales occurred late in 2007 which were reported as receipts in 2008 such that the Defendants' total annual sales in 2007 would have exceeded $500,000.

[10]Clearly, the record evidence does not support a finding that the Defendants, even considered jointly, had sufficient annual sales or business done in 2008 or 2009, as Plaintiffs have not established that Defendants under-reported their income by more than $136,000 or $248,000 (the difference between the reported gross receipts in 2007 and 2008, respectively, and the FLSA threshold of $500,000).

truck,[11] see, e.g., Depo. of Colin, p. 10 of Dkt. No. 62-23, Depo. of Arilus, p. 13 of Dkt. No. 62-21, and a total of seven or eight employees working for Defendants in 2009, see Depo. of Francois, p. 8-9 of Dkt. No. 62-18. Plaintiffs (and other employees) were hired by Defendant DiEmmanuele directly and were employed by Defendant JAD, see Depo. of DiEmmanuele, p. 17 of Dkt. No. 62-3, which paid for any time the Plaintiffs performed services at the Gardens, see Depo. of DiEmmanuele, p. 31 of Dkt. No. 62-1, p. 16 of Dkt. No. 62-2. Defendant Gardens had only one part-time employee and no full-time employees, see Depo. of DiEmmanuele, p. 13 of Dkt. No. 62-1, p. 26 of Dkt. No. 62-2, pp. 9, 13-14 of Dkt. No. 62-3. According to Defendant DiEmmanuele, months would go by without any sales of trees by Defendant Gardens. See Depo. of DiEmmanuele, p. 42 of Dkt. No. 62-1. Some income was received by renting space at the nursery to another company which paid rent to Defendant Gardens in order to store materials at the nursery. See Depo. of DiEmmanuele, p. 48 of Dkt. No. 62-2. The Court observes that the corporate Defendants' annual volume of gross sales or business done decreased each year after 2006 through 2009, to the extent that Defendants - collectively or individually - clearly did not meet the FLSA threshold of $500,000 in annual sales or business done in those later years.

Although a corporate income tax return provides strong evidence of an employers' "annual gross volume of sales made or business done," the Court finds that Defendants have credibly explained why such tax returns in this case do not

---

[11]Plaintiff Arilus testified that there were three trucks operating daily during 2005 through 2008. See Depo. of Arilus, p. 13 of Dkt. No. 62-21.

completely address the question which must be answered before imposing liability under the FLSA. Clearly, the FLSA does not require a party to prove annual sales only through reliance on a corporate income tax return, i.e., other admissible evidence may be presented to establish the amount of annual sales or to challenge the accuracy of tax returns. See, e.g., Rodriguez v. Marble Care Int'l, Inc., 2012 WL 1949360 (S.D. Fla. March 5, 2012), Lopez v. Pereyra, 2009 U.S. Dist. LEXIS 105234, 2009 WL 3586907 (S.D. Fla. Oct. 27, 2009). Defendants have presented a strong argument that the 2006 gross receipts reported on their tax return do not accurately report the "business done" in that year, i.e., that the threshold $500,000 was not met, and, as such the Court need not reach the question of whether Defendants' enterprise engaged in interstate commerce; the Court finds that Plaintiffs have not met their burden of establishing FLSA coverage for 2006.

As noted above, the Court need not even address the question of the Defendants' annual sales or business done in 2006 unless Plaintiffs have established a basis for extending the statute of limitations beyond two years, i.e., extending the damages period back to July 2006. Defendants argue that there is no question of material fact as to whether the Defendants were willful in the alleged violations of the FLSA such that an additional year of damages would be available and, as such, the only relevant time period to examine for FLSA coverage is from July 24, 2007, through July 23, 2009. The Court agrees, and finds that Plaintiffs have failed to establish a basis for extending the relevant time period beyond two

18

years; indeed, Plaintiff Colin testified that he was paid fully for each week that he

worked and that any errors in his pay were corrected promptly by the employer.

See Depo. of Colin, pp. 12-13, 15-16 of Dkt. No. 51-4 (excerpts).[12]  Moreover, as

detailed above, Defendants were not subject to the FLSA during the calendar years

of 2007 through 2009, and probably were not subject to the FLSA in the calendar

year 2006; despite the lack of a statutory obligation to do so, Defendants paid

overtime wages to Plaintiffs in 2006 for at least the first five hours of overtime

worked each week.  Defendants acknowledge that on those occasions when

Plaintiffs worked more than 45 hours, they were not paid at an overtime rate and

instead were paid in cash, at their regular rate of pay.[13]  In light of these facts, the

Court cannot find that Defendants were willful in their alleged non-compliance with

the FLSA's provisions relating to overtime wages at any time pertinent to this case.

 Finding no basis for a determination that any alleged violation of the FLSA

---

[12]The Court observes that one of the three named Plaintiffs testified that he
was not owed **any** wages by Defendants. See Depo. of Colin, pp. 8-9, 11-12 of Dkt.
No. 51-4. According to Plaintiff Colin, he only participated in this lawsuit "to know
why I was fired and why that I don't get the paper to go to social." See Depo. of
Colin, p. 9 of Dkt. No. 51-4. Plaintiff's deposition testimony **directly contradicts** the
Answers he provided to Interrogatories, See Dkt. No. 62-24, in which he claims that
he is owed 15 hours of overtime for 47 weeks annually.

[13]The record is unclear, but it may be that Defendants were paying overtime
wages in 2007 - 2009 (as in 2006), at least as to some hours, as Plaintiffs admit
receiving some of their wages in 2007-2009 in cash, which appeared to be the
Defendants' standard practice when Plaintiffs exceeded 45 hours weekly (the first
five hours were paid at an overtime rate, by check, and anything in excess of 45 was
paid at a regular rate, in cash). Defendants' conduct, while not perfectly compliant
with the FLSA's overtime provisions, is not for this Court to criticize, as the Court
has found that there was no statutory obligation on Defendants to comply with the
FLSA's overtime provisions at any time relevant to this case.

was willful, the Court finds that the relevant time period for any alleged damages would be from July 2007 through July 2009.[14]  Having concluded, above, that the Plaintiffs failed to establish FLSA coverage during the relevant time period, the Defendants are entitled to summary judgment.   Based on the above, it is

ORDERED AND ADJUDGED that the Defendants' motion for summary judgment is GRANTED.  Plaintiffs have not established that the Defendants were subject to the FLSA in 2006, 2007, 2008 and 2009; even if the Defendants did meet the jurisdictional threshold in 2006, there was no basis for a finding of willfulness such that the limitations period would be extended beyond two years prior to the initiation of this case. As such, summary judgment is entered against Plaintiffs.

Further, Plaintiffs' motion for enlargement of time to conduct discovery and file a motion for summary judgment is DENIED, as MOOT.

DONE AND ORDERED in Miami, Florida this 19th day of September 2012.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

cc:   Jason Remer
      Chris Kleppin

_____

[14]The W-2 statements provided by Plaintiffs were as to calendar year 2006 and, in light of the Court's determination that Plaintiffs have not demonstrated that Defendants intentionally violated the FLSA such that the statute of limitations should be extended to three years, are irrelevant.